In re MIRAJ & SONS, INC., Debtor.

Bankruptcy No. 94–45220–HJB.

United States Bankruptcy Court,
D. Massachusetts.

July 3, 1996.

Mark N. Polebaum, Boston, MA, for Debtor.

Robert G. Najarian, Jr., Boston, MA, for The Cadle Company of Ohio, Inc.

## *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Before this Court is the calculation of the amount of the claim of The Cadle Company of Ohio, Inc. ("Cadle") in this case, as well as the "Supplemental Objections of The Cadle Company of Ohio, Inc. to Debtor's Amended Plan of Reorganization".

## I. BACKGROUND

On November 28, 1994, Miraj & Sons, Inc. (the "Debtor") filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. On or about December 15, 1994, Cadle filed with this Court four proofs of claim in the respective amounts of $1,812,400.82, $181,684.93, $147,081.66 and $57,702.40.[1] The Debtor timely objected to the proofs of claim and the hearing on the said objections was set in conjunction with the hearing on confirmation of the Debtor's Second Amended Plan of Reorganization.

On June 6, 1995, the Court approved the Debtor's Second Amended Disclosure Statement and set the hearing on confirmation of the Debtor's Second Amended Plan for August 14, 1995. The Court also set August 9, 1995 as the deadline for the submission of ballots of acceptance and rejection as well as for any objections to confirmation of the Debtor's Second Amended Plan. Cadle filed no objection to the Plan. However, when the Debtor subsequently filed a motion to amend its plan in order to alter its treatment of the claim of BayBank, N.A., another secured creditor, Cadle filed an objection to the said amendment.

At the August 14, 1995 hearing, counsel for the Debtor sought first to meet its burdens under the confirmation standards of 11

U.S.C. § 1129(a). After an offer of proof made by affidavits, the Debtor argued that all of the § 1129(a) requirements for confirmation had been met by that offer of proof, excepting only the requirement set forth in § 1129(a)(11)[2]. The Debtor conceded that it could not satisfy § 1129(a)(11) without obtaining first a determination of the size of the disputed Cadle claim. According to the Debtor, allowance of the claim of Cadle in an amount in excess of $950,000 would render the Second Amended Plan not feasible.

The following exchange then transpired between the Court and counsel for Cadle:

THE COURT: As far as we've gone, is Cadle in agreement with the statement that Mr. Polebaum [counsel to the Debtor] just made, that to the extent that the Court ultimately enters a decision which is final that Cadle's claim is no more than $950,000, that all the confirmation standards have been met?

MR. DOONAN [counsel to Cadle]: It would be easier, Your Honor, if I could just say yes. Unfortunately, I can't. The Cadle Company, Your Honor, would suggest that its Class 3 note should be treated exactly the same as the BayBank note should be treated. And that if BayBank is going to be at ten percent over a fifteen-year amortization, then the Cadle note should be at fifteen years and a ten percent amortization.

THE COURT: All right. So this goes to the motion to amend the plan?

MR. DOONAN: Yes, Your Honor.

THE COURT: All right. So there's one issue that I have to deal with. Are there other issues?

MR. DOONAN: A side issue really, Your Honor, the qualifications of Mr. Keith to testify as to what the market rate is.

THE COURT: All right. We can take that up when Mr. Keith arrives. So

---

1. On June 29, 1994, Cadle purchased the underlying claims from the Federal Deposit Insurance Corporation, as liquidating agent for the Bank for Savings.

2. 11 U.S.C. § 1129(a)(11) provides in relevant part:
   (a) The court shall confirm a plan only if all of the following requirements are met:

. . . .
   (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

when—so to the extent that the Court disposes of the motion to amend the plan, that is the—that is the **only** issue that we have relative to confirmation, other than the dominant issue, which is, what is Cadle's claim?

MR. DOONAN: Yes, Your Honor.

(Transcript, pp. 21–22) (emphasis supplied).

■ Following the foregoing exchange, the Court allowed the Debtor's motion to further amend the Second Amended Plan, overruling Cadle's objection to the altered treatment of the Baybank claim. As for Cadle's objection to the testimony of Mr. Keith, Cadle's counsel failed to crossexamine Mr. Keith in any way at the trial. Accordingly, the Court deems Cadle's objection to Mr. Keith's qualifications as waived. In any event, the Court was well satisfied that Mr. Keith was qualified to render an opinion as to market rates on account of his knowledge, experience, training and education.[3] *See* Fed.R.Evid. 702.

What followed was a two day trial (August 14 and 21, 1995) on the Debtor's objections to Cadle's claim. The various facts found and legal issues determined as a result of that trial are set forth in this Court's Order of February 16, 1996 (the "First Order") and in the Memorandum of Decision of even date (the "Memorandum").

Despite the First Order, the Court was unable to determine the full amount of the offset. In its Memorandum, the Court found that the Debtor was entitled to offset against the Cadle claim repudiation damages of $1,169,000, *plus the interest "charged by Cadle on that difference from March 20, 1992*

and *included in its proof (sic) of claim"*. (Memorandum, p. 34). The March 20, 1992 date was selected by the Court because 12 U.S.C. § 1821(e)(3)(A)(ii)(I)[4] looks to the date the FDIC was appointed receiver in order to determine repudiation damages. Interest on that principal reduction was, therefore, also properly part of the offset. However, because neither party had offered testimony or any other submission as to the appropriate interest offset calculated as of March 20, 1992, the First Order set forth only the principal reduction of $1,169,000. The Court set a further hearing for March 4, 1996, relative to the amount of interest to be offset and to determine the impact of the reduced claim on confirmation of the Debtor's Second Amended Plan.

The scheduled March 4, 1996 hearing was continued to March 19, 1996 when Cadle retained new counsel. On March 18, 1996, Cadle filed its Supplemental Objections to confirmation of the Second Amended Plan.

At the March 19, 1996 hearing, the parties identified a dispute with respect to the calculation of the unresolved interest. That dispute arose from the language of the Memorandum and First Order which required an offset for interest charged by Cadle on the offset principal from the date of March 20, 1992 and included in its proofs of claim. The Debtor maintained that the parameters of the interest to be calculated was too limited. The Debtor also claimed to be entitled to an offset for interest *paid to the FDIC* from March 20, 1992 and before Cadle purchased the claim in 1994. The Debtor further requested reduction of the late charges set forth in the Cadle proofs of claim. Cadle

---

3. Through his appraisal, admitted into evidence, Mr. Keith represented himself to be a member of the Appraisal Institute with a MAI Designation. He is a certified general appraiser, licensed in both Massachusetts and Connecticut. His education includes not only Syracuse University and the University of Nebraska–Lincoln, but also courses with the American Institute of Real Estate Appraisers in relevant topics. He has been involved in the appraisal field since 1972 and has been employed with Allied Appraisal of New England, Inc. of Worcester, Massachusetts since 1989. He presently serves that company as its Executive Vice President.

   As stated above, Cadle offered no crossexamination.

4. 12 U.S.C. § 1821(e)(3)(A)(ii)(I) provides in relevant part:

   (A) In general
   . . . the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph 1 shall be—

   (ii) determined as of—
   (I) the date of the appointment of the conservator or receiver . . .

   The FDIC was appointed receiver of the Bank for Savings on March 20, 1992.

740

disagreed. Finally, the Debtor also maintained that the issues raised in the Supplemental Objections to confirmation filed by Cadle were untimely and/or waived by Cadle at the August 14, 1995 hearing. The Court again sought briefs and took the matter under advisement.[5]

## II. DISCUSSION

### A. The Supplemental Objections

Cadle argues, through its Supplemental Objections that the Debtor's Second Amended Plan is not confirmable for two (2) reasons. First, it reminds the Court that the Debtor conceded initially that the Plan would not be feasible if the Cadle claim exceeded $950,000. It also reminds the Court that its rulings of February 16, 1996 are still subject to appeal. Therefore, argues Cadle, the Plan is not confirmable if the Plan does not provide for the contingency of reversal by an appellate court and reestablishment of the full Cadle claim. In support, Cadle cites *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In the Matter of Pizza of Hawaii, Inc.)*, 761 F.2d 1374 (9th Cir.1985).

■ Cadle's first argument is without merit. Section 1129(a)(11) requires the Court to make a finding as to whether confirmation is "likely" to be followed by a need for liquidation or further financial reorganization. This Court has already determined that Cadle's claim will be allowed at an amount which will ensure compliance with that requirement. Compliance with § 1129(a)(11) does not mandate that the plan provide for the contingency of this Court's reversal by an appellate court. Furthermore the *Pizza of Hawaii* case is inapposite. In that case, the 9th Circuit ruled that the Bankruptcy court had erred in finding compliance with § 1129(a)(11) without properly estimating an outstanding claim. However, in the *Pizza of Hawaii* case, the Bankruptcy court had disallowed the claim at issue,

whereas the Circuit court ruled that the claim was properly filed and subject to estimation. *Id.* at 1381. In the case before this Court, that portion of the Cadle claim subject to the instant dispute has been disallowed and there has been no decision reversing the disallowance. That distinction is critical.

■ Cadle's second argument is that § 1129(a) requires the Court to treat Cadle's claim "fairly and equitably"[6] and that the Second Amended Plan fails to do so. However, all of the issues other than those under § 1129(a)(11) have been finally determined. Cadle waived any objections which it might have had in this regard on two separate occasions. Cadle failed to file any objection to the Second Amended Plan within the deadline set by the Court for objections to confirmation (August 9). Then, in open court, Cadle informed the Court that no issues (other than as set forth above) remained for resolution. In so doing, Cadle waived any further objections to confirmation of the Second Amended Plan.

### B. Calculation of Interest Offset

■ Upon reexamination of the parameters set by the Court in the First Order and Memorandum for the calculation of the interest offset, it appears that the Court correctly discovered the law, but misapplied it to the facts.

In the Memorandum, the Court ruled that the FDIC had repudiated the end loan financing agreements at issue and, pursuant to § 1821(e)(3)(A)(ii)(I), repudiation damages should be determined as of the date that the FDIC was appointed Receiver. The Court believes that portion of the analysis to be correct. However, in determining how much to offset for interest on the principal reduction, the Court ruled that the said interest should be the amount charged by Cadle on the offset principal and included in its proofs

---

5. Also a subject of contest at the hearing was Cadle's request for a stay of further proceeding pending the prosecution of an appeal to the District Court filed on February 23, 1996. The Court denied the request for stay without prejudice, since the Court ruled that its Order of February 16, 1996 was interlocutory. The District Court has subsequently agreed by dismiss-

ing the appeal by its order of June 27, 1996 (Gorton, D.J.) in District Court case no. 96–40116–NMG.

6. Cadle complains with respect to the amount of interest proposed to be paid on its claim as well as to the term of repayment.

of claim. · That portion of the analysis was in error. Section 1821(e)(3)(A)(ii)(I) requires that the repudiation damages (and, therefore, the resulting claim) be measured as of March 20, 1992, the date of the Receiver's appointment. The date of Cadle's acquisition of that claim is irrelevant. Therefore, the claim must be reduced not only by the interest charged by Cadle (as set forth in the First Order and Memorandum), but also by the interest charged by the FDIC on and after March 20, 1992 and prior to the acquisition of the claim by Cadle. The Debtor is entitled to offset such interest regardless of whether it was paid to the FDIC.

At the hearing on March 19, 1996, the Court invited the parties to make a further submission with respect to the amount of interest to be reduced. The Debtor timely submitted two alternative detailed analyses of the interest to be offset, together with the Debtor's affidavit with respect thereto. The first analysis assumed that the First Order would not be altered by the Court and seeks a reduction of $176,582.31 in interest charged by Cadle on the offset principal. The second analysis adds a calculation of the prorata interest paid by the Debtor to the FDIC. The latter increased the amount of interest to be offset to $283,638.00. Both alternatives seeks a further reduction for late charges of $16,480.00 set forth in the Cadle proof of claim.[7] In its further submission, Cadle argues only that interest should be calculated in accordance with this Court's now rejected February 16, 1996 analysis. In the event that the Court departs from that analysis, Cadle seeks yet another evidentiary hearing on the actual amount of interest paid by the Debtor from March 20, 1992 to March 18, 1993, the last date on which the Debtor paid interest.

The Court finds the Cadle request for a further evidentiary hearing at the very least annoying, since payments from the Debtor to the FDIC are undoubtedly recorded in the FDIC records. Copies of those records are presumably under the control of Cadle. Nevertheless, the Court will, out of an abundance of caution, set an evidentiary hearing

on the prorata interest and late charges charged to the Debtor by the FDIC or Cadle on the amount of $1,169,000 on or after March 20, 1992, regardless of the holder of the claim and regardless of whether such interest and late charges were paid. Prior to that time, the Debtor will be ordered to furnish to Cadle such documentary evidence as it may have with respect to payments made by the Debtor to the FDIC on and after March 20, 1992, as well as a calculation of the interest and late charges sought to be reduced. Cadle will be afforded a deadline within which to object to that submission. In the absence of a timely filed objection by Cadle, or a material issue of fact to be tried, the Court will cancel the hearing, rule on the papers submitted, render a final order with respect to the Cadle claim, and enter an order confirming the Debtor's Second Amended Plan.

## III. CONCLUSION

Based on the foregoing, Cadle's Supplemental Objections to the Debtor's Second Amended Plan are overruled. The Court amends its Memorandum of Decision, dated February 16, 1996, by increasing the offset against the Cadle claim by the prorata interest and late charges charged to the Debtor by Cadle or the FDIC on the amount of $1,169,000 on and after March 20, 1992, regardless of the holder of the claim and regardless of whether such interest and late charges were paid. A separate Order shall issue in conformity with this Memorandum.

---

**7.** Although not explicitly set forth in the First Order and Memorandum, the late charges

should, under the circumstances, also be subject to prorata offset.