**TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,**
Plaintiff,

v.

**BECK DEVELOPMENT CORP.,**
et al., Defendants.

No. CIV.A.2:00CV253.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 4, 2000.

Curtis Gilbert Manchester, Samuel Miles Dumville, Reed Smith Hazel & Thomas LLP, Richmond, VA, for Plaintiff.

Michael L. Sterling, David W. Lannetti, Vandeventer Black LLP, Norfolk, VA, for Defendant Susan M. Merritt.

### ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

MORGAN, District Judge.

This matter comes before the Court on a Motion for Temporary Restraining Order filed by Travelers Casualty & Surety Company of America ("Plaintiff") against Susan M. Merritt. After a hearing on this matter on April 26, 2000, the Court **DENIED** the Plaintiff's motion. This Order further explains that ruling.

### I. *Factual*[1] *and Procedural Background*

On April 10, 2000, the Plaintiff filed a Complaint against Beck Development Corporation, Beck Contracting North Carolina, Inc., Beck Holdings, Robert L. Duda, Susan M. Merritt, and the Estate of Christopher L. Merritt (collectively "Defendants"), seeking the following: (1) damages resulting from the breach of three indemnity agreements; (2) an injunction preventing the Defendants from removing or disposing of any property or assets in which the Plaintiff has a perfected security interest; (3) an accounting of all such property and assets already removed or disposed of; and (4) specific performance of a provision in the indemnity agreements requiring the Defendants to provide collateral security. Along with the Complaint, the Plaintiff filed a Motion for Preliminary Injunction and Motion for Temporary Restraining Order. Although the Plaintiff filed these motions with respect to all of the Defendants, the only issue heard by

the Court was the Plaintiff's Motion for Temporary Restraining Order against Susan Merritt.

The three indemnity agreements in question were entered into by the Plaintiff and the Defendants[2] as part of an overall agreement by the Plaintiff to serve as corporate surety for Beck Development on payment and performance bonds for certain public and private construction projects on which Beck Development acted as general contractor. In these agreements, the Defendants promise to indemnify the Plaintiff against any and all losses, liabilities, costs, and expenses sustained or incurred by the Plaintiff in connection with or as a result of the Plaintiff executing the bonds. Additionally, the agreements grant the Plaintiff a security interest in certain property and assets of the indemnitor defendants.

According to the Plaintiff, the general contractor has defaulted on the underlying contracts by abandoning the construction contracts and failing to make payments on bills in connection with those projects. As a result of the default on the underlying contracts, the Plaintiff claims that it has or will incur losses in excess of $3,000,000. Facing such losses, the Plaintiff has made demands upon the Defendants, as indemnitors, to cure the defaults and otherwise honor their indemnity obligations, but has met with no success. Furthermore, the corporate general contractors have ceased operations and have allegedly removed or disposed of all property and assets from which the Plaintiff could satisfy a judgment obtained in the future.

While the Plaintiff has not abandoned recourse against the corporate defendants, in the present matter before the Court, the

---

1. The factual findings contained in this Order are for the sole purpose of deciding upon the Plaintiff's Motion for a Temporary Restraining Order.

2. Not all of the Defendants signed each agreement. The first agreement, dated September 3, 1997, was executed by Beck Development, Beck Holdings, and Robert L. Duda. The sec-

ond agreement, dated October 28, 1999, was executed by Beck Development, Beck Contracting, Robert L. Duda, Christopher L. Merritt, and Susan M. Merritt. The third agreement, dated October 28, 1999, was executed by Beck Contracting, Christopher L. Merritt, and Susan M. Merritt.

Plaintiff has moved to limit Susan M. Merritt, the widow of Christopher L. Merritt and an individual indemnitor, in the expenditure of life insurance proceeds. Less than a month after signing the last two indemnity agreements, Christopher Merritt died leaving behind his wife and three children. At the time of Christopher Merritt's death, Beck Development and Susan Merritt were the beneficiaries of what has been described as a $2,000,000 "key-man" life insurance policy, each receiving half of the proceeds. The Plaintiff contends that it has either a perfected security interest or an equitable interest in those proceeds arising from the indemnity agreements. According to the Plaintiff, however, Beck Development has already disbursed its share of the proceeds to other creditors, and Susan Merritt has refused to pledge her share as collateral or place it in an escrow account to await the outcome of this matter. The Plaintiff therefore seeks a temporary restraining order limiting Susan Merritt's ability to alienate or otherwise dispose of the funds in question.[3]

## II. *Analysis*

### A. **Authority of the Court to Grant Injunctive Relief**[4]

■ Drawing on relevant Supreme Court decisions, the Fourth Circuit in *United States ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 489 (4th Cir. 1999), set forth several principles which should guide a district court in its determination of whether it has the power to issue an injunction which would place substantial prejudgment restraints on a defendant's ability to use or dispose of his property. First, a district court lacks the power un-der Rule 65 of the Federal Rules of Civil Procedure and the court's general equitable authority to issue an injunction preventing the transfer of assets in an action solely for money damages where the party seeking the injunction has no lien or equitable interest in the property. *See Rahman*, 198 F.3d at 496; *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 1975, 144 L.Ed.2d 319 (1999). As a second principle, however, the Fourth Circuit stated:

> [W]hen the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested. This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets.

*Rahman*, 198 F.3d at 496–97. Finally, when the public interest is involved, a district court would have expanded authority to grant injunctive relief. *See id.* at 497.

■ In applying those principles in a case involving a claim for equitable relief, a court should proceed through a two-step analysis. First, the court should determine whether the party moving for the injunction is seeking "cognizable relief in equity involving assets of the defendant." *Id.* at 497. In making this initial determination, a district court must also find that a suffi-

---

**3.** Although Susan Merritt received a notice of a hearing on a preliminary injunction, the Plaintiff submitted a proposed order seeking a temporary restraining order, and the Court has proceeded as though the Plaintiff was in fact seeking a temporary restraining order.

**4.** The Plaintiff has not cited a specific source which gives the Court the authority to grant the relief requested here. The Court therefore must determine whether it has such au-thority under its general equitable power. In taking this approach, the Court is aware that Rule 64 of the Federal Rules of Civil Procedure (which allows a court to consider state mechanisms for prejudgment attachment of property) could also be a source for that authority. The Plaintiff, however, has not raised Rule 64 as a basis. Even had it done so, the Plaintiff has not provided sufficient evidence to invoke any of the state procedures.

cient nexus exists between the assets and the equitable relief sought. *See id.* at 496–97. If the court finds that the party seeking relief has met those requirements, the court should then proceed to the second step and determine whether the interim relief "is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." *Id.* at 497.

## B. Step One: The Plaintiff's Interest in the Insurance Proceeds

In its Complaint the Plaintiff has made a claim for both monetary damages and equitable relief. Based upon the principles set forth above, the Court would have the authority to grant the requested injunctive relief if the Plaintiff can show that it has either a security interest or an equitable interest in the insurance proceeds.

### 1. The Equitable Interest Alleged[5]

■ The Plaintiff contends that it has an equitable interest in the insurance proceeds distributed to Susan Merritt based upon the language of the indemnity agreement relied upon by the Plaintiff and identified as Exhibit B to its Complaint. In making that argument, the Plaintiff cites Paragraphs 5, 6(D) and 6(E) which provide as follows:

5. *Collateral Security*—Indemnitor agrees to pay the [Plaintiff], upon demand, an amount sufficient to discharge any claim or demand made against the [Plaintiff] on any Bond. Indemnitor further agrees to pay the [Plaintiff], upon demand, an amount equal to the value of improperly diverted Indemnitor assets or Contract Funds. These sums may be used by the [Plaintiff] to pay such claim

or be held by the [Plaintiff] as collateral security against any loss, claim, liability or unpaid premium on any Bond. The [Plaintiff] shall have no duty to invest, or provide interest on the deposit.

6. *Remedies.* In the event of a Default, Indemnitor assigns, conveys, and transfers to the [Plaintiff] all of the rights and interest growing in any manner out of the Contracts and assigns all right, title, and interest of all of Indemnitor's plant, tools, vehicles, machinery, equipment and materials, to be effective as of the date of such Contracts. In addition, in the event of a Default, the [Plaintiff] shall have a right at its sole discretion to:

. . . . .

(D) Execute in the name of the Indemnitor any instruments deemed necessary or desirable by the [Plaintiff] to . . . (c) collect such sums as may be due Indemnitor . . . ;

(E) Take possession of the Indemnitor's rights, title and interest in and to all Contracts, subcontracts let and insurance policies in connection therewith. . . .

Pl.'s Compl. Ex. B, ¶¶ 5 and 6. Based upon this language, the Plaintiff argues that it has an equitable interest in the insurance proceeds for the following reasons: (1) Paragraph 5 gives the Plaintiff the right to demand collateral sufficient to cover claims made against it; (2) the general language in Paragraph 6(D) gives the Plaintiff the right to take control over a broad range of an indemnitor's assets which would include Susan Merritt's life insurance proceeds here; and (3) Para-

---

**5.** Paragraph 12 of the indemnity agreement grants the Plaintiff a security interest in certain property and assets. That paragraph states, "As security, the Indemnitor hereby grants to [Plaintiff] a security interest in all of its equipment, machinery, vehicles, tools, and material, as well as sums due or to become due in connection with any contract." It is clear from that language, however, that Paragraph 12 only covers property and assets of the general contractors and would not give

the Plaintiff a security interest in any specific asset of Susan Merritt. Furthermore, even if Paragraph 12 could be construed as providing such an interest, the Plaintiff must still deal with the exclusion of life insurance policies under Article 9 of the Virginia Uniform Commercial Code. *See* Va.Code § 8.9–104(g). Therefore, the Court will only focus on whether the Plaintiff has a sufficient equitable interest in the life insurance proceeds to support its claim for equitable relief.

graph 6(E) specifically allows the Plaintiff to take possession of an indemnitor's interest in insurance policies.

## 2. Assessment of the Plaintiff's Interest

Despite the Plaintiff's assertions to the contrary, the language contained in these provisions does not grant the Plaintiff a sufficient equitable interest in the insurance proceeds to authorize the Court to grant injunctive relief. As a prerequisite to granting such relief, the Plaintiff must demonstrate that a nexus exists between the ultimate relief sought and the specific assets in question. See Rahman, 198 F.3d at 496–97. In order to satisfy the nexus requirement, the Plaintiff must show that it has an equitable interest in the life insurance policy or its proceeds.

█ In this context, establishing a sufficient equitable interest may be accomplished in at least two ways. First, the plaintiff may have a direct interest in property such that, although no misconduct was involved in the indemnitor initially obtaining possession of that property, the indemnitor's continued possession of the property in light of the obligation owed to the plaintiff would give the plaintiff the right to relief in equity concerning that specific property. Second, the defendant may have come into possession of the property as a result of his' own fraud or other misconduct which by itself may give the plaintiff a right to equitable relief involving that property. Under either method, the key to establishing an equitable interest, and therefore the required nexus, depends upon the facts of the case and not merely upon alleging a combination of debt, possession of property by the indemnitor, and a claim for equitable relief.

Based upon the facts presently before the Court, the Plaintiff has failed to demonstrate the required nexus. Unlike the situation in Rahman and other decisions [6] allowing injunctive relief, the Plaintiff has not alleged, much less proffered evidence, that Susan Merritt came into possession of the life insurance proceeds through some sort of fraud or misconduct. In fact, those proceeds are totally unrelated to the losses the Plaintiff has suffered or will suffer as a result of the acts of default committed by the general contractors. Likewise, none of the provisions in the indemnity agreement creates a direct interest in the life insurance policy or its proceeds. While Paragraph 6(E) makes specific reference to insurance policies, by its own terms that paragraph only covers insurance policies taken out in connection with the underlying contracts or subcontracts. The Plaintiff, however, has proffered no evidence to suggest that this life insurance policy was taken out in connection with any of those

---

6. The case which comes the closest to supporting the Plaintiff's position is Fairview Machine & Tool Co. v. Oakbrook International, Inc., 77 F.Supp.2d 199 (D.Mass.1999). In that case the plaintiff sold machinery to the defendants, but never received the full purchase price in return. The defendants apparently then sold that machinery as well as other assets to another party and used the proceeds to pay other creditors. The plaintiff brought suit alleging a number of claims including one for restitution based upon quantum meruit. The plaintiff also sought and was granted a preliminary injunction preventing the defendants from selling off other assets.

Responding to the Grupo Mexicano case, however, the defendants made a motion for reconsideration of the injunction. In denying that motion, the court relied heavily upon the decision of the Fourth Circuit in Rahman, and found that (1) the plaintiff had·a cognizable claim in equity, (2) the plaintiff was seeking to recover from specific assets of the defendant, and (3) the injunction would be a reasonable measure to preserve the status quo in aid of the ultimate relief claimed.

Although it could be argued that the mere claim in equity involving identified assets of the defendant was sufficient for the injunction, the distinguishing factor lies in the misconduct of the defendant in diverting the proceeds from the sale of the machinery. Thus, that income could have enabled the defendant to acquire or retain other assets which became the subject of the injunction. Therefore, even if this case was controlling, it is distinguishable from the case currently before the Court.

contracts, that the Plaintiff relied on that policy as collateral, or that the policy was in anyway made payable to Plaintiff upon demand. Paragraphs 5 and 6(D), on the other hand, contain overly broad language which identify no property or asset. These paragraphs simply attempt to provide the Plaintiff with unlimited, but unspecified, sources of payment. The lack of specificity, however, proves fatal to Plaintiff's claim of a direct interest in any identifiable asset.

Given the facts of the present case, the nature of the relief requested provides an additional reason for the Court to conclude that the Plaintiff does not have an equitable interest in the life insurance policy or its proceeds. In making this claim for equitable relief, the Plaintiff has asked the Court to order the specific performance of contractual duties of indemnity, but such duties involve nothing more than the payment or pledging of money. Accordingly, specific performance is an improper remedy generally, and requesting it provides no direct interest in any asset of Susan Merritt.[7]

### 3. Conclusion

Aside from the bald assertions of the Plaintiff that the life insurance policy was part of the "indemnity package," the Court has no basis for concluding that the proceeds payable to Susan Merritt represent anything other than a standard insurance policy on the life of Christopher Merritt for the benefit of his family. Without more, the Court certainly has no basis for finding that the Plaintiff is entitled to restrain the expenditure of the proceeds from that policy prejudgment. Therefore, the Court **FINDS** that the Plaintiff has failed to demonstrate that it has an equitable interest in the insurance proceeds. The Court further **FINDS** that, without an equitable interest, the Plaintiff has not demonstrated a sufficient nexus between the equitable relief sought and any specific

asset of Susan Merritt. For these reasons the Court need not address Step Two of the required analysis, and hereby **DE-NIES** the Plaintiff's Motion for a Temporary Restraining Order without prejudice to its right to later seek a preliminary injunction.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED.**

---

7. Furthermore, this is not a situation involving public assets where the Court would have expanded authority to provide injunctive relief. *See Rahman,* 198 F.3d at 497.