In re SEATCO, INC., Debtor.

No. 00–37332–BJH–11.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 21, 2001.

Paul B. Geilich, John K. Turner, Bell & Nunnally & Martin, L.L.P., Dallas, TX, for debtor.

Gregory G. Hesse, Leslie R. Masterson, Jenkens & Gilchrist, A.P.C., Dallas, TX,

for creditor CIT Group/Business Credit, Inc.

Mark MacDonald, MacDonald & Schuble, Dallas, TX, for creditor CIT Group/Business Credit, Inc.

## *MEMORANDUM OPINION*

BARBARA J. HOUSER, Bankruptcy Judge.

Before the Court is the Motion for Approval of Third Modification of Plan and for Reconsideration of Order Denying Confirmation and Request for Expedited Hearing (the "Second Motion to Modify and Reconsider"). The Court heard the Second Motion to Modify and Reconsider on February 12, 2001.[1] The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding. 28 U.S.C. § 157(b). This Memorandum Opinion contains the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this action by Federal Rule of Bankruptcy Procedure 7052.[2]

## I. PROCEDURAL BACKGROUND

This contested confirmation hearing concluded on January 8, 2001. On January 19, 2001, the Court issued its Memorandum Opinion and Order Denying Confirmation of the Second Amended Plan of Reorganization, as modified on January 3, 2001 (the "First Modification") (hereinafter the Second Amended Plan and the First Modification will be collectively referred to as the "Plan"), of Seatco, Inc. ("Seatco" or the "Debtor") (the "Original Memorandum Opinion" and the "Original Order").

1. The Debtor filed a Fourth Modification to Debtor's Second Amended Plan of Reorganization shortly before the hearing that contained certain additional proposed clarifications to the plan.

2. Any capitalized term not defined herein shall have the meaning set forth in the Original Memorandum Opinion.

On January 23, 2001, the Debtor filed its Motion for Approval of Second Modification of Plan and for Reconsideration of Order Denying Confirmation and Request for Expedited Hearing (the "First Motion to Modify and Reconsider") and sought an order from this Court confirming the Plan as further modified (the "Modified Plan"). On January 30, 2001, CIT Group/Business Credit, Inc. ("CIT") filed its Objection to the First Motion to Modify and Reconsider (the "January 30 Objection"). The Court heard the First Motion to Modify and Reconsider on January 31, 2001.

In the Original Memorandum Opinion and the Original Order, the Court denied confirmation of the Plan due to certain inconsistencies between the permanent injunction section of the Plan, section 11.03, and the temporary injunction section of the Plan, section 11.04. In the First Motion to Modify and Reconsider, the Debtor proposed to modify the Plan to delete the inconsistent language in section 11.03 identified by the Court in the Original Memorandum Opinion. CIT objected to confirmation of the Modified Plan for a variety of reasons in the January 30 Objection and contended, as relevant here, that the permanent injunction provision of the Modified Plan, section 11.03, still violated § 524(e) of the Bankruptcy Code. Specifically, CIT contended that the Modified Plan improperly released or discharged attorneys and financial advisors of the Debtor from claims that CIT may have against such third parties (and that no record was made to support such an injunction) and because it may release or discharge tort claims that CIT had recently filed against Earl Kester ("Kester"), the Debtor's President and sole shareholder.[3]

3. CIT filed a Complaint against Kester on January 30, 2001 in the United States District Court for the Northern District of Illinois, Case No. 01C – 0653, asserting 2 counts each of conversion and fraud (the "Tort Claims") and 1 count of liability under the Guaranty (the "Kester Lawsuit").

After considering the January 30 Objection and the newly filed Kester Lawsuit, the Court agreed with CIT that the provisions of the Modified Plan providing permanent injunctive relief, section 11.03, and temporary injunctive relief, section 11.04, must be clarified further and must specifically address the effect of confirmation on the tort claims now asserted in the Kester Lawsuit. Thus, on February 2, 2001, the Court issued its Memorandum Opinion and Order denying, without prejudice, the First Motion to Modify and Reconsider.

The Debtor filed the Second Motion to Modify and Reconsider on February 7, 2001, and now seeks an order from this Court confirming the Modified Plan as further modified by the Fourth Modification to Debtor's Second Amended Plan of Reorganization (the "Further Modified Plan"). CIT objects to confirmation of the Further Modified Plan.

## II. CIT'S OBJECTIONS

### A. Injunctive Relief

CIT objects to the injunction provisions of the Further Modified Plan on three grounds. First, CIT objects to this Court entering any final order or judgment imposing the injunctions contained in sections 11.03 and 11.04 of the Further Modified Plan. CIT now contends that this is a non-core proceeding and that the Court can only issue proposed findings and conclusions for submission to the District Court pursuant to 28 U.S.C. § 157(c)(1). Second, CIT contends that the proposed injunction violates "the spirit, if not the express language," of § 524(e) of the Bankruptcy Code. *See* January 30 Objection at ¶ 13. Finally, CIT objects to the proposed injunction because, *inter alia,* Kester has not been required to post a bond or disclose his assets and liabilities under oath; he is not being restrained from converting non-exempt assets to exempt assets; he is not limited by a budget on personal expenses; he is not enjoined

from depleting or converting CIT's collateral; he is not required to turnover any part of his non-exempt assets; he is not subject to any salary, shareholder advance or dividend limits; and he is not required to pay a portion of his salary to CIT. Each continuing objection will be separately addressed.

### 1. Core vs. Non–Core

The Court found that this contested confirmation hearing is a core proceeding under 28 U.S.C. § 157(b) in the Original Memorandum Opinion. In at least four (4) prior pleadings, CIT admitted that this is a core proceeding over which this Court has jurisdiction to enter a final judgment. For example, in its Objection to Disclosure Statement Pertaining to Debtor's Plan of Reorganization filed on November 9, 2000, CIT stated that "[t]his Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. § 1334 and this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O)." CIT filed its Objection to the Debtor's First Amended Plan of Reorganization on November 27, 2000 and again admitted that "[t]his Court has jurisdiction to consider confirmation of the Plan pursuant to 28 U.S.C. § 1334, and this is a core proceeding within the meaning of 28 U.S.C. § 157(b)." CIT made the same admissions in its Supplemental Objection to the Debtor's Second Amended Plan of Reorganization filed on December 1, 2000 and its Second Supplemental Objection to the Debtor's Second Amended Plan of Reorganization filed on December 4, 2000.

CIT contended that this was a non-core proceeding for the first time in the January 30 Objection, after the Court had spent days hearing all of the evidence and CIT's objections to confirmation, and after the Court had issued the Original Memorandum Opinion in which it found that it had jurisdiction to enter a final judgment in connection with this contested confirma-

tion hearing.[4]

■ As it did in the Original Memorandum Opinion, the Court finds again that this is a core proceeding over which it has jurisdiction to enter a final order. Alternatively, even if this is a non-core proceeding, as a result of its repeated prior admissions, CIT has consented to this Court's jurisdiction to enter a final order. *See* 28 U.S.C. § 157(c)(2); *Hiser v. Neumann Medical Center, Inc. (In re St. Mary Hospital)*, 117 B.R. 125, 131 (Bankr. E.D.Pa.1990) ("An admission that a proceeding is core accords irrevocable consent to a bankruptcy court to determine the proceedings, even if it is non-core"); *see also Gravel and Shea v. Vermont Nat'l Bank*, 162 B.R. 961, 966 (D.Vt.1993) (finding that in the context of an adversary proceeding, "[i]n its answer to VNB's Complaint, Gravel and Shea admitted that the proceeding was core. The Bankruptcy Judge below found that Gravel and Shea's admission that the proceeding was core amounted to explicit consent ... Such an admission has been deemed express consent to the bankruptcy court's final determination of the matter") (citations omitted); *cf. McFarland v. Leyh (In re Texas General Petroleum Corp.)*, 52 F.3d 1330, 1337 (5th Cir.1995).

**2. § 524(e)**

■ CIT reargues its earlier objection to confirmation and contends that the Further Modified Plan does not comply with § 1129(a)(1) of the Code because the permanent injunction and temporary injunction provisions of the Further Modified Plan improperly discharge non-debtor third parties in violation of § 524(e) of the Bankruptcy Code. For the reasons stated in the Original Memorandum Opinion and as further clarified below, CIT's objections are overruled.

It is important to understand what the Further Modified Plan does, and perhaps more importantly, does not do. The permanent injunction provision of the Further Modified Plan, section 11.03, has no effect on CIT at all. CIT's requested language from paragraph 19 of the January 30 Objection was placed in section 11.03 of the Further Modified Plan. Section 11.03 of the Further Modified Plan now provides that

> Nothing in this paragraph 11.03 shall constitute a permanent injunction against CIT from commencing or continuing any suits, attachments or judgments against Earl Kester or any other party on guarantees or tort claims, nor shall it prohibit CIT from setoff or recoupment, nor shall it prohibit CIT from perfecting or enforcing its claims, liens or security interests under the Plan.

Moreover, any reference to attorneys or financial advisors has been deleted. The permanent injunction provision of the Further Modified Plan simply restates in injunction terms the effect of confirmation of the Further Modified Plan in accordance with § 1141 of the Bankruptcy Code.[5]

Turning to the temporary injunction provision of the Further Modified Plan, section 11.04, that provision only restrains CIT from its efforts to collect from Kester pursuant to the Guaranty those amounts being paid to CIT under the Further Modified Plan. If the Further Modified Plan is confirmed, CIT is free to pursue Kester on the Guaranty for any amounts owing to it that are not being paid under the Plan, in one suit or from time to time, and, if the Debtor defaults on its plan payments to CIT after notice and an opportunity to cure, CIT may pursue Kester on the Guaranty for all amounts owing to it without further order of the Court. The tempo-

---

**4.** Under 28 U.S.C. § 157(b)(3), CIT must raise this issue in a timely fashion. The Court finds that CIT failed to object on a timely basis.

**5.** This type of permanent injunction provision is often placed in a plan of reorganization so that other courts, particularly state courts, not familiar with the Bankruptcy Code understand the effect of a discharge of the Debtor's liability to creditors upon confirmation of a plan of reorganization.

rary injunction expires on its own upon an uncured default.

As is clear from the terms of the Further Modified Plan itself, confirmation of that plan does not affect Kester's liability to CIT on the Guaranty. Kester remains liable to CIT for any amounts not being paid under the Further Modified Plan and for amounts to be paid under the Further Modified Plan if the Debtor defaults. Confirmation of the Further Modified Plan does not violate § 524(e) of the Bankruptcy Code. The proposed temporary injunction against CIT is necessary and appropriate to carry out the provisions of the Bankruptcy Code. The only harm to CIT from confirmation of the Further Modified Plan is that CIT would be forced to accept payment terms that it finds unacceptable. Although the payment terms are not to its liking, CIT's allowed secured claim against the Debtor is being paid in full. *See* Original Memorandum Opinion at pp. 22–26.

For these reasons and those stated in the Original Memorandum Opinion, CIT's objections are overruled.[6]

### 3. Technical Objections

CIT now contends that the temporary injunction cannot be issued unless Kester is required to do a variety of things including, *inter alia,* (i) posting a bond, (ii) disclosing his assets, (iii) turning over his non-exempt assets to CIT, (iv) being placed on salary limitations, and (v) paying over a portion of his salary to CIT. Prior to filing the January 30 Objection, CIT filed four objections to the Debtor's disclo-

sure statement and/or confirmation of the Debtor's plan of reorganization. Each prior pleading objected to the injunction provisions of the plan. However, none of the prior objections raised any of these issues.

■ The local rules for the bankruptcy courts in the Northern District of Texas require that absent an order stating otherwise, objections to confirmation be filed no later than four (4) days prior to the confirmation hearing. *See* N.D.Tex.L.B.R. 3020.1 ("Unless the Court orders otherwise, an objection to confirmation shall be filed no later than 4 days prior to the date set for hearing on confirmation of the plan."). In this case, the Court signed an Order directing that any objections to confirmation be filed and actually received by Debtor's counsel by 4:00 p.m. on November 27, 2000. *See* Order Conditionally Approving Disclosure Statement under 11 U.S.C. § 1125(f), Approving Solicitation Letter and Ballot and Setting Deadlines for Plan Balloting, Objections to First Amended Plan of Reorganization and Motions to Estimate Claims. CIT failed to raise these objections prior to either deadline, and failed to raise them in any of its supplemental objections that were filed before the close of the evidence at the confirmation hearing.[7] Only now, after the evidence has been closed for weeks and the Court has issued the Original Memorandum Opinion and Original Order, has CIT raised these particular complaints. Because these issues were not raised by CIT in a timely fashion as required by either

---

**6.** CIT also argues that injunctive relief is improper because CIT has not consented to such relief, citing *In re Master Mortgage Invest. Fund,* 168 B.R. 930, 935 (Bankr.W.D.Mo. 1994). CIT apparently confuses the factors some courts have looked to in connection with permanent injunctions and third party releases, *see* Original Memorandum Opinion at p. 5, with the traditional standards for the issuance of injunctive relief that the Court applied here. *See* Original Memorandum Opinion at pp. 11–12. If CIT was being permanently enjoined from anything under the Further Modified Plan, the Court might have been required to consider the five factors

identified by the *Master Mortgage* court. Because the permanent injunction provision of the Further Modified Plan has no effect on CIT, the absence of consent is not relevant.

**7.** While the Plan has been modified since the commencement of the confirmation hearing, the Plan has always contained permanent and temporary injunction provisions. In fact, the modifications that have been made to the injunction provisions since the objection deadline have limited the scope of injunctive relief, not broadened it.

the local rules or this Court's prior Order, CIT waived these objections. *See In re Miraj & Sons, Inc.,* 197 B.R. 737, 740 (Bankr.D.Mass.1996) ("Cadle waived any objections which it might have had in this regard on two separate occasions. Cadle failed to file any objection to the Second Amended Plan within the deadline set by the Court (August 9). Then in open court, Cadle informed the Court that no other issue ... remained for resolution. In so doing, Cadle waived any further objections to confirmation of the Second Amended Plan."); *In re Bludworth Bond Shipyard, Inc.,* 93 B.R 520, 521 (Bankr.S.D.Tex.1988) ("Failure on the part of a party in interest to file an objection to confirmation prior to the deadline fixed by the court results in waiver of the right to object.").

■ Although the Court believes that CIT should not be permitted to raise issues that could and should have been raised months earlier, the Court will address these issues on the merits to facilitate appellate review. As a beneficiary of the proposed temporary injunction, Kester is not required to post a bond. The Debtor is the party seeking to temporarily enjoin CIT's collection efforts against Kester pursuant to the Guaranty in order to facilitate its successful implementation of the Further Modified Plan. The Debtor is not required to post a bond to obtain injunctive relief in a bankruptcy case. *See* FED. R.BANKR.P. 7065 ("Rule 65 F.R.Civ.P. applies in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c).") [8]; *Wolf Financial Group, Inc. v.*

*Hughes Construction Co. (In re Wolf Financial Group, Inc.),* Nos. 94–B44009 (JLG), 94–B44010 (JLG), and 94–8884A, 1994 WL 913278, *3 (Bankr.S.D.N.Y. Dec.15, 1994) ("Bankruptcy Rule 7065 makes Fed.R.Civ.P. 65 applicable in adversary proceedings, 'except that a temporary restraining order or preliminary injunction may be issued upon the application of a ... debtor in possession without compliance with Rule 65(c).' "); *In re Chateau Village Retail Office Condo. Ass'n., Inc.,* BankrApp. No. CA 90–4117, 1991 WL 94187, *3 (E.D.La. May 29, 1991) ("FRCP 65(c) required an applicant for a preliminary injunction to give security. Bankr. Rule 7065 clearly states, however, that injunctive relief can be granted without complying with FRCP 65(c)."); *Martin v. Union Chelsea Nat'l Bank (In re Butcher),* 79 B.R. 747, 748–49 (Bkrtcy.E.D.Tenn.1987) (same).

■ With respect to CIT's remaining objections, CIT essentially seeks prejudgment collection remedies from this Court. Even if the Further Modified Plan is confirmed, CIT is free to pursue any tort claims it may have against Kester and to pursue Kester for any amounts owing to it pursuant to the Prepetition Loan Agreement that are not being paid to CIT under the Further Modified Plan.[9] Through these objections, CIT asks this Court to assist it in its efforts to collect judgments it does not yet have against Kester. The Court cannot grant prejudgment relief to CIT. *See, e.g., Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 333, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) (finding that "the Dis-

---

**8.** Although Bankruptcy Rule 7065 refers to "adversary proceedings," part VII of the Bankruptcy Rules apply in contested matters, like this contested confirmation hearing. *See* Fed.R.Bank.P. 3020(b)(1) and 9014. *See also* Committee Notes to Fed.R.Bank.P. 9014 (stating that when the part VII rules (*i.e.,* Bankruptcy Rule 7001, *et seq.*) are applicable to a contested matter, any reference to an "adversary proceeding" is to "be read as a reference to a contested matter").

**9.** The Debtor is paying CIT's allowed secured claim in full under the Further Modified Plan. However, if there are amounts owing to CIT under the Prepetition Loan Agreement that are not properly allowable against the Debtor in its bankruptcy case (and thus, are not part of CIT's allowed secured claim against the Debtor), CIT may pursue Kester now, or from time to time hereafter, for those amounts.

trict Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages"); *ContiChem LPG v. Parsons Shipping Co., Ltd.* 229 F.3d 426, 430 (2d Cir.2000) ("As a preliminary matter, we agree with the district court's determination that because ContiChem did not have a judgment against Parsons, the court had no equitable power to issue a preliminary injunction preventing any entity from disposing of Parsons' assets pending arbitration of the dispute. Absent a prior judgment, the district court properly denied ContiChem's request.") (citations omitted); *Sabratek Corp. v. LaSalle Bank, N.A.,* 257 B.R. 732 (Bankr. D.Del.2000) ("The injunctive relief which the Committee seeks is in the nature of a prejudgment sequestration or attachment under Federal Rules of Civil Procedure 64 and 65, as incorporated in Federal Rules of Bankruptcy Procedure 7064 and 7065. Such relief is an extraordinary remedy and should be sparingly."); *Travelers Cas. & Sur. Co. of Am. v. Beck Dev. Corp.,* 95 F.Supp.2d 549, 552 (E.D.Va.2000) ("[A] district court lacks the power under Rule 65 of the Federal Rule of Civil Procedure and the court's general equitable authority to issue an injunction preventing the transfer of assets in an action solely for money damages where the party seeking the injunction has no lien or equitable interest in the property.").

## B. Cramdown

■ CIT objects to confirmation of the Further Modified Plan by cramdown (*i.e.,* over its objections). CIT contends that the Further Modified Plan does not provide it with "anything vaguely resembling the indubitable equivalent of its rights as required by 11 U.S.C. § 1129(b)(2)." *See* January 30 Objection at ¶ 2. Specifically, CIT contends that its rights as a revolving lender cannot be modified in a plan of reorganization without its consent or a finding that it is receiving the indubitable

equivalent of its rights under § 1129(b)(2)(A)(iii). The Court disagrees.

A plan of reorganization may be confirmed over the objection of a secured creditor if it does not discriminate unfairly against, and is fair and equitable to, that secured creditor. *See* 11 U.S.C. § 1129(b)(1). Section 1129(b)(2)(A) provides three alternative ways in which a plan may be found to be fair and equitable—(i) that the creditor retain its liens and receive deferred cash payments, of a value, as of the effective date of the plan, of its allowed secured claim; (ii) that the property securing the claim be sold, with the creditor's lien attaching to the sale proceeds, and the lien on proceeds being treated consistent with (i) or (iii) *or* (iii) that the creditor receive the indubitable equivalent of its claims. *See* 11 U.S.C. § 1129(b)(2)(A). While a finding of indubitable equivalence would allow the Court to confirm the Further Modified Plan over CIT's objection under § 1129(b)(2)(A)(iii), so too would a finding under § 1129(b)(2)(A)(i) that CIT was retaining its liens and receiving deferred cash payments having a value, as of the effective date of the Plan, equal to CIT's allowed secured claim. *See Wade v. Bradford,* 39 F.3d 1126, 1130 (10th Cir.1994) ("[B]ecause the debtors' plan satisfied the requirements of § 1129(b)(2)(A)(i), creditor was not entitled to the 'indubitable equivalent' of his claims as described in § 1129(b)(2)(A)(iii). These requirements are written in the disjunctive, requiring the plan to satisfy only one before it could be confirmed over creditor's objection."); *Heartland Federal Sav. & Loan Ass'n. v. Briscoe Enters., Ltd., II (In re Briscoe Enterprises, Ltd., II),* 994 F.2d 1160, 1168 (5th Cir.1993), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993) ("While this Court has held that simple technical compliance with one of the three options in 1129(b)(2)(A) may not necessarily satisfy the fair and equitable requirement, it has not transformed the 'or' in 1129(b)(2)(A) into an 'and.' As we hold that the plan satisfies 1129(b)(2)(A)(i), we

need not attempt to decipher the meaning of 'indubitable equivalent.' ").

As CIT well knows, this Court did not find in the Original Memorandum Opinion that the Plan provided CIT with the indubitable equivalent of its rights under § 1129(b)(2)(A)(iii), nor was the Court required to so find to overrule CIT's objection to confirmation. Rather, the Court found that CIT was retaining its liens under the Plan and receiving deferred cash payments having a present value, as of the effective date of the Plan, equal to CIT's allowed secured claim. *See* Original Memorandum Opinion at p. 25. Based upon this finding the Court concluded that the Plan satisfied § 1129(b)(2)(A)(i) of the Bankruptcy Code. *See* Original Memorandum Opinion at p. 26.

CIT reurges, in the January 30 Objection, its earlier contention that a secured creditor who lends under a prepetition revolving line of credit is entitled to special protections in a bankruptcy case. Specifically, CIT contends that such a secured creditor enjoys unique, prepetition collateral protections (*i.e.,* pursuant to its loan agreement, the borrower's receivables are collected (usually in a lock box account at the lender's bank), those collections are used to pay down the existing loan, and then new monies are advanced to the borrower based upon a formulaic calculation derived from eligible receivables and inventory), and that such a lender cannot have these collateral protections[10] modified over its objection pursuant to a plan of reorganization unless the Court finds that the lender is receiving the indubitable equivalent of its prepetition rights in accordance with § 1129(b)(2)(A)(iii). CIT contends that such a lender is entitled to these special protections, notwithstanding the fact that the lender cannot be forced to

continue to lend to its borrower, now a chapter 11 debtor-in-possession.

CIT cites no authority to support its contentions. This absence of authority is not surprising because the plain meaning of various provisions of the Bankruptcy Code compels the opposite conclusion.

■ To analyze CIT's contention, the Court must first decide whether a secured creditor who advances monies pursuant to a prepetition revolving line of credit can have its prepetition loan agreement modified by a chapter 11 plan of reorganization. The Bankruptcy Code clearly provides such a right to modify. Section 1123(b)(1) specifically provides that "*a plan may impair*[11] or leave unimpaired *any class of claims, secured* or unsecured, or of interests,*" (see* 11 U.S.C. § 1123(b)(1) (emphasis added)) and § 1123(b)(5) specifically provides that "*a plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." *See* 11 U.S.C. § 1123(b)(5) (emphasis added). While § 1123 does except a secured creditor whose claim is secured by the debtor's principal residence from its terms, there is no exception for secured creditors who advanced monies pursuant to a prepetition revolving line of credit. For CIT's position to be correct, § 1123(b)(5) would have to be modified to exclude that class of secured creditor from its terms.

Since the Bankruptcy Code clearly permits a modification of the prepetition loan agreement of a secured creditor who advanced monies under a prepetition revolving line of credit, the next question is what protections are available to such a creditor before the Court can confirm a plan of reorganization over its objection. The

---

**10.** Under this type of lending facility, the amount of the loan outstanding at any time is directly tied to the amount of available collateral (*i.e.,* receivables and inventory).

**11.** Impairment is defined in § 1124 of the Bankruptcy Code. Generally, a claim is impaired unless the plan leaves the legal, equitable, and contractual rights of the claimant unaltered. 11 U.S.C. § 1124(1).

Bankruptcy Code answers that question as well. First, the plan must satisfy all of the requirements of § 1129(a)(1)–(13) that are applicable to the debtor. *See* 11 U.S.C. § 1129(a). Second, the plan cannot "discriminate unfairly" against the objecting secured creditor and the plan must be "fair and equitable" to that creditor. *See* 11 U.S.C. § 1129(b)(1). As noted previously, § 1129(b)(2)(A) is written in the disjunctive and the fair and equitable test is satisfied if either § 1129(b)(2)(A)(i) or (iii) is met.[12] *See supra* at 286. Section 1129(b)(2) specifically provides that

> For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> (A) With respect to a class of secured claims, the plan provides—
>
> (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totalling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

*See* 11 U.S.C. § 1129(b)(2).

The Court found previously that CIT is retaining its liens under the Plan—CIT retains security interests in all of the assets (*i.e.*, real property) or types of assets (*i.e.*, inventory, receivables, proceeds, etc.) in which it held security interests under the Prepetition Loan Agreement—and

that the Plan provides that CIT receive deferred cash payments under the Plan that have a present value, as of the effective date of the Plan, equal to CIT's allowed secured claim. *See* Original Memorandum Opinion at pp. 23–26. Again, for CIT's position to be correct, § 1129(b)(2)(A)(i) would have to be modified to exclude a secured creditor who lent monies pursuant to a prepetition revolving line of credit from its terms.

▮ But a secured creditor like CIT is entitled to more than just literal compliance with § 1129(b)(2)(A)(i)—it is entitled to assurance that the debtor will be able to perform the plan and thus, the secured creditor will receive the payments provided for under the plan. In the Bankruptcy Code's parlance, the creditor is entitled to have the Court find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." *See* 11 U.S.C. § 1129(a)(11). In other words, the creditor is entitled to a finding that the plan is feasible—the reorganized debtor can perform the plan and make those payments promised to it under the plan.

▮ CIT did not object to feasibility of the Plan. The undisputed evidence is that the Debtor's financial projections are reasonable, take current market conditions into account, and that the Debtor will be able to perform the Plan in accordance with its terms. Based upon this evidence, the Court found the Plan to be feasible. *See* Original Memorandum Opinion at p. 26.

In sum, CIT is retaining all of its liens and will receive deferred cash payments having a present value, as of the effective date of the Plan, equal to its allowed se-

---

**12.** As noted previously, the Fifth Circuit stated in *Briscoe Enterprises* that "technical compliance with one of the three options in 1129(b)(2)(A) may not necessarily satisfy the fair and equitable requirement," citing its earlier decision in *Matter of D & F Construction, Inc.*, 865 F.2d 673 (5th Cir.1989). *See Briscoe Enterprises*, 994 F.2d at 1168. That caution-

ary statement is not surprising given the extreme facts in *D & F*—the plan provided for negative amortization of the loan; the deferral of substantially all principal payments for fifteen years; and restrictions on the secured creditor's rights to foreclose on those liens it was "retaining" under the plan.

cured claim. The Plan is feasible and the Debtor should be able to make all of the payments the Plan requires to be made to CIT. If, however, the Debtor defaults on its payments to CIT under the Plan, CIT is entitled to foreclose all of its security interests without further Order of the Court.

Finally, CIT contends that this Court, as a court of equity, should deny confirmation of the Further Modified Plan because to confirm it would reward fraud and conversion. The Court disagrees. What confirmation of the Further Modified Plan does is give other creditors the opportunity to recover on their claims against the Debtor. CIT is fully secured and is being paid in full under the Further Modified Plan. CIT will, in all likelihood, be paid in full if the Debtor does not successfully reorganize and is liquidated. *See* Original Memorandum Opinion at p. 18. Of significance, however, if the Further Modified Plan is confirmed, thereby enabling the Debtor to successfully reorganize, unsecured priority claims (Classes 4 and 5) will be paid in full with interest and general unsecured claims (Class 6) will receive a 35% distribution on their allowed claims paid over 6 years without interest. These unsecured creditors get nothing if the Debtor does not successfully reorganize.

There is no question that the Debtor breached the Prepetition Loan Agreement when it diverted receivables from CIT's lock box and then requested additional advances under the prepetition Revolver. However, virtually every debtor is in default of its prepetition loan agreements with its secured lender when it files bankruptcy. If CIT has independent claims for fraud and conversion against Kester, individually, for these actions, CIT is free to pursue him notwithstanding confirmation of the Further Modified Plan. Confirmation of the Further Modified Plan will not

reward Kester for fraud and conversion if CIT can, in fact, prove its claims against him; but confirmation of the Further Modified Plan will give other creditors the opportunity to receive distributions on account of their allowed claims against the Debtor.

For these reasons and the reasons set forth in the Original Memorandum Opinion, the Court concludes that the Further Modified Plan satisfies all of the Bankruptcy Code's requirements for confirmation over CIT's objection.[13] As the Court found in the Original Memorandum Opinion, all other requirements for confirmation of the Further Modified Plan under § 1129(a) of the Bankruptcy Code that are applicable to the Debtor are satisfied.

An Order confirming the Further Modified Plan will be entered separately.

---

13. All findings and conclusions made with respect to the Plan in the Original Memorandum Opinion are applicable to the Further Modified Plan, except the findings and conclusions addressing the inconsistencies be-

tween the permanent injunction provision of the Plan and the temporary injunction provision of the Plan found on pages 6 and 27 of the Original Memorandum Opinion.